BEN RAY, DE LA ROSSA, DENNIS SHIELDS Army County Sheriff's Division Okay, morning. You'd start by coming up to the lectern here and state your name into the microphone. My name is Jennifer Scott and the appellant on behalf of both appellees. Okay, do you want to reserve some time for rebuttal? Yes, I do. How much would you like to reserve? Let's say seven minutes. Okay, seven minutes. I also wanted to mention we did receive, I believe, last week some additional papers. We are consider briefs that are filed under the rules. We typically disregard other papers that are submitted. So please go ahead. Thank you, Your Honor. I appreciate being here to have these facts and circumstances reviewed de novo. I'm here to ask for, I'm appealing the motion that was denied and here to ask this court to reverse that order of the Bankruptcy Court where he denied my motion for contempt for the appellee's violation of the permanent injunction after discharge and the related issues. And we're here to seek an order from you to grant my motion to award damages to include emotional distress, pain and suffering, actual damages, future and lost earnings, lost earnings and punitive damages. In this case, which arose from a purchase contract, all of the cases that have arisen from it have been the result of the appellee's triggering the arbitration dispute. Can I make a quick point? You can use your time anyway you like. What you appealed was a motion for reconsideration that was denied. That's normally pretty limited review. So you know, you can say whatever you want to say, but what we have to figure out is whether there was a mistake in connection with the denial of a motion for reconsideration. Okay? One of the mistakes that we believe is part of the denial is that one of the appellees has never even filed a creditor's claim. So they have no right to a distribution from the estate. That's how we interpret it. What other effect do you think it has? That he has no standing. No, I'm not, okay. Well, you can say that if you want, but I would suggest to you that the obvious effect of not filing a proof of claim is you don't get a distribution from the estate. If you think it's something more than that, you're going to have to convince me. Well, not a distribution from the estate, and that our position is that any fees that were generated were generated because of a dispute was created. In this case, I characterize what they did as a weaponizing of this arbitration agreement. Twenty-four days or six days before an escrow was to close, a dispute was created. It was never even identified until 2016 when the appellee branch informed the arbitrator under oath that we were in breach of a loan, conditional loan approval that had conditions on it that he got created on March 3rd. And the loan approval that we had was from January 30th, 2014. And we never knew what the specificity of what we were denying. But let me tell you why I characterize this as weaponized. Well, you know, we can't redo or undo what the arbitrator did. That's just not something that we have the power to do. So, again, think carefully about what's before us. Okay, so I'm asking that the motion be granted to us because, in part, Mr. Branch has purchased the house in 2015. The subsequent arbitration for which he ran up a lot of attorney's fees was, I don't even know why he would do that other than to run up attorney's fees. However, we believe it's also an error for the judge to have, he didn't award Mr. Patterson any fees, but fees were You didn't appeal that. What you appealed was a denial of a motion for reconsideration. So that's what is really in front of us today. Again, do whatever you want with your time. It's your time. But, you know, what you get to argue on a motion, a denial of a motion for reconsideration, is that was wrong. And so that's what you're going to convince us today or not. Not what was below that that didn't get appealed. Okay, that what was wrong was, one, is the standing, we believe, for him to receive a distribution and that all of the these fees were discharged in the bankruptcy. That wasn't the issue. I mean, I think, I hear you keep going back to the original, but you brought a motion against them for contempt. So how do they not have standing? Well, as Mr. Branch has never even applied, made a creditor's claim. But you, but the issue that is even more narrow, because you're saying that it was a violation of the discharge and therefore they need to be something, right? And you're seeking money. How can they not, how do they lack standing when you are asking the court to require them to pay you money? It's not really whether they have a claim, it's defending your motion that you brought against them. Okay, for the of the violations, or they had notice, they were, had notice for all the years that they were on both the Chapter 13 and the Chapter 7 filing. And they were aware of us being discharged. He appeared at practically every bankruptcy hearing and even with that information, continued to make collection efforts. When he was and we hired an attorney to go in there for us because my husband was in Mexico being treated, he continued after even that objection to continue to file more, again, a judgment debtors exam in another court. And even, but he never served me with the judgment debtors exam. I learned about it later. But when he went to the on the judgment debtors exam, he asked Judge Lewis to have me arrested, even though I'd never been, or for a warrant to go out for my arrest, even though I'd never been personally served. So that shows that's clearly been a willful violation. He had notice. And if he wants to invoke the safe harbor rule, then I would say that our motion of March 3rd, 2017 gave him, if we take 21 days after that, that would be March 24th. And yet right away again on April 7th, he filed his motion again for a judgment debtor exam. Then we filed finally by July in the bankruptcy court where we certainly didn't feel like going again. We thought we'd gotten rid of Mr. Branch and Mr. Patterson. And there they are again. And now the judge has found that somehow the discharge has been rolled back and has allowed Mr. Patterson to come and collect against us. That's what we're objecting to. I believe that they owe us damages for that. You're close to your seven minutes. If you want to stop now and speak again after Mr. Branch? Yes. Okay. Good morning, your honors. May it please the court, Michael Branch for appellees Michael Branch and Gabriel Patterson, who is also present today. I appreciate the court's time in reviewing this matter and can address any questions that are raised. The issue of the first motion that the bankruptcy court found where there was no basis for issuing an order to show cause, I think is fairly straightforward and clear in the record. The bankruptcy court by Judge Latham issued, I think, a very detailed analysis of what went on. And I believe even prior to that ruling took testimony. He took evidence. He cross examined me. He examined me. I was subject to cross examination, and I where the issue arose about the judgment debtors exam. I do want to correct some of the statements here. There was only one judgment debtors exam that was applied for, and I could have applied for it either in the Branch lawsuit, which was disposed of on an anti-slap basis, which was all clearly post petition, or the Patterson lawsuit. I know this is in the brief, but the reason I chose the Patterson lawsuit was because I had, I thought, the added stipulation and order that carved all of it out from beginning, through arbitration, through resolution. Those are my, through resolution, carved it all out of the court's bankruptcy proceeding. Well, it carved it out of the automatic stay. Well, and the ultimate interpretation was that, I'll say nothing more, okay? Resolution would not necessarily every bankruptcy judge mean collection. Because Well, I would say that when I negotiated this with the bankruptcy attorney, that was certainly my intent. Well, I'm sure it was. Right. But, yeah, and I don't think that that's necessarily to the point, but it does bring up an interesting beginning to your story, because it's how that matter goes outside the bankruptcy. What was the purpose of the arbitration? I really couldn't figure that out from the record. And I want to understand this, because I think it defines or informs who is returning to what fray. Okay. The arbitration was very simple on a purchase contract. It was for specific performance. Very simple. The appellee was the buyer. Appellant was the seller. Before escrow was to close, appellant sent a notice to the escrow company and nobody else saying this escrow is cancelled. Appellant had a real estate agent representing her and a broker representing her and investigated it and found out why is this thing being cancelled. It was nothing other than that. We then wanted to proceed with specific performance and evoke the mediation and requisite ADR. So what happened to the counterclaim? The counterclaim, when we moved to compel arbitration, the appellant filed a cross-complaint for various egregious things. That's not the branch litigation, right? That's separate from that. That is correct. Branch litigation didn't happen until later on. To post. So there was that cross-complaint that the state court said that cross-complaint is also subject to arbitration. So you get all of the seller's claims and you get all of the arbitration and resolve them. That cross-complaint remained. We, you know, there were opportunities, I thought, to get the matters resolved. Was it presented through arbitration? Did it actually go? Yes. However, I'll let the court know in complete candor, the wrinkle was there was also always this cross-complaint that we had to defend. Why don't you go make a deal with the court? Because we have to resolve this cross-complaint. Attempt to resolve it were unavailing. But that was part of the arbitration as well, right? So it could have been fully resolved through the arbitration? Yes. But on the day of the arbitration, I think the arbitration was on Monday or Tuesday. The Friday before the appellant filed a special writ to stop the arbitration with the fourth DCA that was denied. So we proceeded to arbitration. And at the arbitration, the appellant did not pay her arbitration fees. She cannot present her affirmative claims. So proceed on specific performance. An appellant cannot present her affirmative claims. Nonetheless, we're defending a cross-complaint through arbitration and getting all of that. That didn't result in the dismissal of the cross-complaint? It did. Okay. I believe it did. I mean, I think. And the cross-competition? Correct. I don't know. I think. Certainly the cross- complaint was filed before the court ordered everything to go to arbitration. The state court. Correct. Okay. Correct. So there's a larger number of attorney's fees associated with the arbitration, right? That is correct. How much of that is on account of the cross-complaint? The cross-claim? Do you know? I'll break the numbers down like this. The arbitrator awarded about $80,000. Yeah, I remember that part. And it went through and we calculated about, other than about $16,000 was pre-petition. And we didn't. Yeah. But was it broken down? Of the $64,000, there was a series, a series of litigation that we had to defend. Not just the cross-complaint in arbitration, but also a federal court case was filed. The federal court case was filed. An adversary proceeding against us was filed. I believe at one point even a district court case was filed. But that's not part of the damages that you're. Correct. Of the attorney's fees that are post-petition that you're seeking or arguing that you believe were non-dischargeable? It is, as far as the arbitration goes, I would say it certainly is post-petition $64,000, the bulk of it, the vast majority, 90% plus is, was resolving the arbitration. But you can't, out of that vast bulk, you're not able to slice that as to your affirmative claim for specific performance versus the counter-claim that was ultimately dismissed. I believe that if I went back, I probably could. So that leads to. That's not on the record now, right? That is not. I mean, I presented to Judge Latham at the bankruptcy court level pre-petition versus post-petition. Yeah. Okay. Is it your position that, again, I need to hypothetical, but if there had been no count or cross-claim filed and you move this from bankruptcy into back to the state court and arbitration, would you still, is your position that anything that you had to spend on that would be non-dischargeable, that you could go out, go after the debt despite the bankruptcy and despite her discharge? I think some of it would be because the adversary proceeding was obviously post-petition. Well, no, I'm talking just about the Patterson arbitration. The branch matter and that's completely different. I understand that. But I want to focus because most of it's in Patterson. Okay. So if there had been nothing, if there had been no cross-claim, are you saying the fact that she actually defended post-petition gave rise to non-dischargeability? No, not at all. Let me see if I can answer it this way. I think if this is what you're trying to get at, Your Honor, if there was not a cross-complaint, I don't think we would have needed the arbitration. I think we would have made a deal with the trustee, wrapped it up, and been done with it. Okay. And the reason that I say this is, you know, we looked at why do we continue to go through other of the defendants too who are also subject to her cross-complaint in arbitration, her cross-complaints which were resolved in arbitration. How can we get out of this? If you make a deal with the trustee for specific performance, this all goes away. Did the trustee participate in the arbitration or just realize that you've got to finish up with her and then I'll do what I need to do? The trustee's attorney was present at the arbitration and gave testimony as well because we were trying to buy the owner. Were they a party or do you remember? They were a party to a separate lawsuit that she filed? That is correct. He was a witness at the arbitration. She filed a lawsuit against the trustee and the trustee's attorney. Okay. But part of what we were trying to also convey, the trustee's attorney was a party at the arbitration because there were turnover orders, I believe, that were not complied with. Anything that Patterson needed to do to continue to purchase this property, whether it was through a specific performance award or through the They needed a water heater strapped in. They needed just the various things before the funding of the loan could take place. The loan company, the bank, wanted to see simple things, two simple things. A CO2 monitor plugged in and a water heater strapped in. It's an older house. We go to strap in the water heater that day, everybody makes arrangements, and the water heater's gone, removed, taken out. So there was a series of things that prevented the funding of the loan from being available, but the funding of the loan was contingent upon I think those two things. Okay. Do you want to address really quickly the question I was putting to Ms. Scott that, you know, this really is just an appeal from a motion for reconsideration. Do you want to tell us why that should be affirmed? Because there's no new facts and no new law. Okay. Everything that was presented when she moved to reconsider, everything had been presented before. And there was no confusion about the judge's disposition, meaning he began the hearing thinking, well, maybe I need some further briefing and ended the hearing slightly differently. Not to my mind. I mean, I thought the judge wrote two orders, both from the original order and the motion for reconsideration, analyzing some of the same facts in the motion for reconsideration and properly denied the motion. Okay. Thank you. Thank you very much. You have about seven and a half minutes roughly. So please go ahead. Only one JDEX was taken. However, a prior hearing was held on 3-3-17. So, yes, it's true that there was only one JDEX that he applied for, but he had branch court, the one where I had filed for the litigation privilege for how could he be putting a list pendants on our home while he hasn't even made a down payment. He could have bought the home. All he had to do was fund the escrow. When I sent a note to escrow to be canceled, it's because they sued us. And escrow didn't cancel. It stayed open for two years. At no point was it true. As far as the cross complaint, it was filed pre-petition. And it was filed five months after, or it was filed in October. And our petition was filed in November. As far as the going to arbitration, why would you go to arbitration a year after your client has bought the property? As far as a It just so happened that the same time that we converted to a seven, the attorney that we had then forgot to add our homestead. So, when I asked them about it, and I asked the trustee's attorney about it, they said, too bad, it's too late. And our attorney said, what you have to do then is file a removed it over. When we filed for the writ, it was to get our homestead back. I can't imagine what attorney's fees he would have for that. It had to be served on everybody, but it was to the trustee. When we went to the district court in April of 2017 and filed, erroneously thought we were doing a we thought it had to be the district court, but we found it had to go back to bankruptcy. That's why, finally in July, which is a few months later, I filed for the motion for reconsideration of this rollback of our discharge. All of the, including the branch litigation, which all arises because they would not produce the down payment. What they did is tie up the property, appear to be a BFP, have me defend myself, run up litigation costs for himself, as I'm defending myself, but claim them for himself, because they tie up the property and then don't do anything. If he wants arbitration in July, and he wants a waiver in January, then why didn't he do anything more? So, I made the effort, and I filed for the litigation privilege because the stipulation to resolve the lawsuit. I believed that the lawsuit would be resolved, and I had an expert tell me, and put it into these papers, that it's a failure of consideration. He doesn't even have the standing for the specific performance. They never made a down payment. Can you imagine just accepting it, oh, we don't make a down payment, you're sued, we're going to do a sell to anybody, I can't refile a bankruptcy, I'm stuck until November, and he's not doing anything about either buying the house, or show us where there's a down payment. We're just twisting in the wind, and every time we do something, he gins it up as an attorney fee. So, it's an appearance of legal fees. Okay, they've been accepted, and he's been very successful in the San Diego courts, but those were our efforts, which I believe were foreseeable, reasonably contemplated at the time that they wanted the arbitration to go forward, that if someone might object to you just taking their home without a down payment, and in my efforts to object, they now are attorney's fees. I don't know what he really defended. He went to an arbitration, and he tried to enforce a $449,000 contract after his client had already paid $465,000 to the trustee. For us, this is cognitive dissonance. Someone can take my house, but they don't make a down payment. They demand arbitration, but they wait two deals with the trustee and whatever it was, but we're being billed like $80,000, and none of these are post-petition, or all of these were fairly contemplated at the time that the arbitration clause was triggered by them. He could have just made the down payment. ASTRO was open for over two years. They opened a new one in 2016, I believe, with Tycor. So I think it's very false to argue that I stopped, and he never made a down payment. Imagine yourselves in that position. It's your only home. You're in your 70s. My husband was very ill, still is. We go to sell our house, and everything is going beautifully. Six days before ASTRO's to close, we're finally told we're in breach. So now we want to sell our house to somebody else. Oh, list pendants. Can't do it. So we're twisting for these past several years, finally thought it was over on December 30th, and well, at least we won't have to deal with these people that make us crazy with their appearance of a legitimate lawsuit, but they don't do anything about it. So whatever we do to try to make something happen, to resolve it, comes back against us. It's still an astonishing position to be in. And I certainly hope that this court can be persuaded that his debt was, all of the debts to either of them, arose pre-petition. We were not in bankruptcy, even when we filed our cross claim. We didn't file it, we couldn't believe that this young man that we saw, we just couldn't even believe we were in that position, to tell you the truth. So I know I've repeated myself now, but my position is really, all of those activities were fairly contemplated, and at the time that he triggered all these arbitration requests, when he could have just funded the loan, or made the down payment. However, we're now in this position, where he's managed to gin up all these fees, and his client has got the house. We're out of our house, we're out of our savings, we can't even afford to live in the United States, he wants to have a collection against me? My career is behind me. I don't manage a Thank you very much. I appreciate your time and your good arguments. The case is submitted. Thank you.
judges: Faris, Lafferty, and Spraker